## MORRISON *v.* WOOLSON.

The defendant, who was sued as surviving partner in the firm of Gardner & Woolson, pleaded that, residing here, he made his petition to the district court in this State for the benefit of the bankrupt act, and such proceedings were thereupon had that he was decreed a bankrupt, and the court decreed that he should be discharged from all the debts of the partnership, that were due when he filed his petition.

*Held,* on demurrer to the rejoinder, that it was no valid objection to the plea that it stated the defendant to have been decreed a bankrupt, but did not state that he was decreed a bankrupt as partner, or that his partner was also decreed a bankrupt.

That as the plea shewed the district court to have had jurisdiction, and to have proceeded on the petition to decree the discharge, all the intermediate steps would, on this demurrer, be presumed to have been regularly taken.

That the plea in this case might be understood to state the legal effect of the decree pleaded, and that this method of pleading the discharge was sufficient.

That the plea in this case was not avoided by a replication, which stated that prior to the defendant's petition his partner, residing in another district, filed a petition in the proper court of that district for the benefit of the bankrupt act, as partner, and the court in that district proceeded to declare him a bankrupt and appoint an assignee of his property.

If a plea of discharge by decree in bankruptcy alleges that the plaintiff's demands were due and owing at the time when the defendant filed his petition, it is sufficient without stating the legal conclusion that they were provable under the commission.

DEBT. The declaration contained three counts:

1. For goods sold and delivered to the defendant and one Thomas J. Gardner, whom the defendant survives, as partners under the style of Gardner & Woolson.

2. Money had and received by the same firm.

3. Upon a judgment recovered by the plaintiff against the defendant in his own right.

To the first and second counts the defendant pleaded *nil debet* and the statute of limitations. No questions are raised on these pleas.

To the first and second counts the defendant further pleaded that "the said several supposed causes of action, if any such there were," were debts owing by the defendant as a member of said firm of Gardner & Woolson, on the twenty-first day of December, 1842, and on that day the defendant, being then and ever since a citizen and resident of Littleton in this State, applied to the district court of the United States for the district of New-Hampshire, by his petition, verified by his oath, for the benefit in his private right and capacity and as a member of the firm of Gardner & Woolson, of the bankrupt act; and thereupon such proceedings were had that said defendant was by a decree of said court declared a bankrupt, and on the twentieth day of December, 1843, it was decreed by said court that the defendant be fully discharged of and from all his debts owing by him as a member of the firm of Gardner & Woolson at the time of the presentation of his petition."

To the third court the defendant pleaded that the debt was owing by him on the twenty-first day of December, 1842, and, being a resident in New-Hampshire, he then made his petition to the district court, for the benefit of the bankrupt act, and on the twenty-first of December, 1843, was discharged; making no mention of the partnership.

To each of these pleas of discharge in bankruptcy the plaintiffs replied, severally:

That prior to the presenting of the defendants' petition in bankruptcy on the fifteenth day of April, 1842, Thomas J. Gardner, partner in the firm of Gardner & Woolson, was a resident and citizen of Pensacola, in Escambia county, in the territory of Florida, that the principal place of business of the firm was at Pensacola; and that he there applied to the superior court of Escambia county by his petition, verified by his oath, for the benefit in his private right and capacity and as a member of the

firm of Gardner & Woolson, of the bankrupt act. "And thereupon such proceedings were had that afterwards, to wit: on the fourteenth day of May, 1842, said Gardner was by a decree of said superior court duly declared a bankrupt and afterwards, to wit: on the same day, William W. Kelley, Esquire, was by said superior court duly appointed the said Gardner's assignee, and this the plaintiffs are ready to verify."

To these replications the defendant rejoined, severally, that the partnership was dissolved when Gardner petitioned, and sundry other matters.

The plaintiffs demurred to the rejoinders, assigning duplicity and several other causes of demurrer.

The questions in the case arise on the demurrer.

*C. R. Morrison* for the plaintiffs.

If the defendant's plea of discharge in bankruptcy, pleaded to the first and second counts, shews that the district court in this State had jurisdiction to discharge him from the debt of Gardner & Woolson, then the replication shows that the territorial court in Florida had, on Gardner's petition, jurisdiction adequate to *his* discharge from the debts of that firm; for the allegations in the plea and replication, so far as relates to this question, are precisely the same, *mutatis mutandis*.

A jurisdiction adequate to the discharge of Gardner from the debts of Gardner & Woolson necessarily included a jurisdiction over the assets of the firm. The power to distribute the assets and the power to discharge from the debts must exist together in the same tribunal, or not at all. The court which grants a discharge, is required to make a distribution. If there is no power to distribute, there is none to grant a certificate. In order to a distribution there must be a jurisdiction over the assets. Otherwise each partner might be fully released from the debts of the firm by different tribunals, neither of which had power to divide the property of the firm among the creditors.

The Florida court, upon Gardner's petition, having obtained jurisdiction over the assets of the firm before the defendant applied to the district court here, the latter had not any jurisdic-

tion over such property, and because it had not jurisdiction over it, had no jurisdiction to discharge the defendant from the debts of the company. The jurisdiction of the Florida court having once attached was necessarily exclusive. Consequently, the plea to the first and second counts is avoided by the replication.

A similar course of argument shows that the plea to the third count is also avoided by the replication.

For a jurisdiction adequate to a discharge from partnership debts must not only include a jurisdiction over the partnership property, but also over the separate estate of each partner ; for in case there is a surplus of individual property over individual debts, it is to be divided among the creditors of the partnership ; and so the power to administer upon individual property with a view to this distribution must exist in that tribunal which discharges such debts.

Accordingly, the fourteenth section provides that whether the order contemplated by the act is made upon the petition of the partners or any one of them " all the joint stock and property of the company and also all the separate estate of each of the partners shall be taken — all the creditors of the company and the separate creditors of each partner shall be allowed to prove their respective debts." Each estate is first to bear its own debts, and any surplus is then to be applied to the other class of debts, and " the certificate of discharge shall be granted or refused to each partner, as the same would or ought to be if the proceedings had been against him alone under this act."

Hence, the court in Florida upon the application of Gardner acquired jurisdiction over the joint estate, the separate estate of Woolson and of course over him ; with power to grant or deny him a discharge. And because that court had such jurisdiction, the other court had not ; and could give him no valid discharge from either joint or separate debts. *Ex parte Horace Hall*, 5 Ld. Raym., 269.

The plea to the first and second counts was bad,

1. Because the decree of bankruptcy was not sufficient to vest in the assignee the joint stock of the company and the separate estate of Gardner.

.If the allegation of the decree of bankruptcy in this plea is sufficient to show that the court took jurisdiction of the person of Gardner and of his estate and the estate of the partnership, the same allegation in the replication is sufficient to show that the court in Florida took jurisdiction of the partnership in the proceeding there.

It makes no difference whether the plea be considered as descriptive of the decree of bankruptcy, or as stating its legal effect; the statement of the decree is alike in the plea and the replication.

It was necessary for the defendant to state the decree of bankruptcy; but even if it were not, having assumed to state it, he was bound to prove it sufficient to warrant the decree that was founded on it  *Tracy* v. *Dakin,* 7 Johns. Rep., 75.

The decree being shown to the court, there is no room for a reasonable presumption that its effect was more extensive, and different from what appears by the plea.

The only part of the act of 1841 that provides for taking the joint stock of the company and the separate stock of each partner is the fourteenth section.   The word *order* is here used for decree of bankruptcy; no other sensible meaning can be attached to it.   5 Ld. Raym., 221 and 318.

This order should be, not that the petitioning partner, but that all the partners should be declared bankrupts.   On what principle could the joint stock be taken except by a joint decree ?

In *Fisher & a.* v. *Currier & a.,* 5 Ld. Raym., 217, Judge *Sprague* held that where the partners of a firm are insolvent and there is sufficient ground for a decree of bankruptcy against any member of the firm, the decree must go against all the members.

The order on the defendant's petition was simply that *he* be declared a bankrupt; it was not even that he be declared bankrupt as a partner.   By that decree neither the separate property of Gardner nor the joint stock of the company could be taken.

2.   Every decree of bankruptcy under the fourteenth section, and conformed to it, would carry the joint stock of the company

and the separate stock of each partner. No one could be discharged from debts, which he owed as a partner, except by proceedings under the fourteenth section and conformed to it.

This section provides that " where two or more persons, who are partners in trade, become insolvent, an order may be made in the manner provided in this act either on the petition of such partners or any one of them, or on the petition of any creditor of the partners." This confers an authority not given before, or else it is entirely useless. It was intended to furnish and does furnish an adequate remedy for the discharge of insolvent partners in all cases where they ought to be discharged ; and by implication prohibits it from being done in any other manner. Plowd., 206, b. cited 1 Kent's Com., 467, note, *U. S.* v. *One Case of Hair Pencils*, 1 Paine, 400 ; 16 Mass. Rep., 70.

If the fourteenth section were not in the act, quite likely the first should be held to include partners ; but the express provision of the fourteenth section excludes any implication from the first. *Crouch* v. *Fowle*, 9 N. H. Rep., 219 ; Bacon's Ab. Statute, 4.

The act did not contemplate any bankruptcy, under which partnership and separate debts should be paid *pro rata* without any preference. But the fifth section declares that " all creditors coming in and proving their debts under such bankruptcy, shall be entitled to share in the bankrupt's property *pro rata,* without any priority or preference." The bankruptcy, therefore, here intended by the term *such bankruptcy*, did not mean a bankruptcy which would end in the extinguishment of partnership debts ; and those debts were not intended to be included in the first section, but were to be taken up by the fourteenth.

In short, no one could be discharged from liability as a partner, except by proceedings by virtue of and in conformity with the fourteenth section. No proceedings were of this character, unless the decree of bankruptcy was sufficient to vest in the assignee the joint stock of the company and the separate estate of each partner. The decree upon the defendant's petition would not produce such effects, and therefore did not justify his discharge from the debts of Gardner & Woolson.

The plaintiffs could not have proved their debts and received dividends equally with the defendant's private creditors, and so their respective claims were not in any just sense provable under his bankruptcy and are not barred by it.

Perhaps the only decree that could have been properly entered on the defendant's application was a joint one against both partners, and so the decree was a nullity. But I see no reason why a person might not be a bankrupt in one capacity and not in another. However that may be, he was not in bankruptcy as a partner.

*Ex parte Yale*, 3 P. Wms., 25, *note*, is not in point, because the English statute differs materially from ours.

5. Both pleas are defective, because they do not aver that the plaintiffs' debts were provable under the act. *Sackett* v. *Andross*, 5 Hill's Rep., 327.

6. Both pleas are defective, because they do not confess the cause of action, but merely speak of the " supposed causes, if any such there were." Stephen Pl., 200 ; *Gould* v. *Leesbourg*, 2 Dowl., 707.

*H. A. Bellows* for the defendant.

PERLEY, J. Are the defendant's pleas of his discharge in bankruptcy sufficient?

It is objected to them both, that they do not allege the plaintiffs' demands to have been provable under the commission. They allege that the demands in suit were debts due and owing when the petition was filed, and that it was decreed by the district court that the defendant should be discharged from all debts that he owed at the time when he presented his petition.

All debts due when the petition was presented, were by the bankrupt act provable under the commission. To this there would seem to be no exception. Certain other claims were also provable ; but all debts due at the time of filing the petition are made provable under the commission. Whether the demands were provable is a legal conclusion to be drawn from the facts stated. The plea states those facts, and that is sufficient.

To aver a more legal inference is unnecessary and idle. This precise point was decided in *Harrington* v. *M'Naughten*, 20 Vermont Rep., 293.

In *Sackett* v. *Andross*, cited for the plaintiff, the court say, "The discharge, as set out in the plea, is restricted to debts provable under the said act. There is no averment in the plea that the debt due to the plaintiff was provable under the bankrupt act, and without such averment the discharge does not appear to be a bar to the action." The plea in that case was therefore clearly bad, for it neither stated the legal conclusion that the debt was provable under the commission, nor the facts from which the court could draw that conclusion.

The plaintiff also contends that the pleas are bad, because they do not confess the causes of action stated in the count to which they are pleaded. The pleas allege that the "said several supposed causes of action, if any there were, were debts due," &c. In pleadings at law, all facts sufficiently alleged, and not denied by the pleadings of the adverse party, are taken to be admitted and confessed. Where a special plea, professing to introduce new matter by way of avoidance, in substance denies the cause of action stated in the declaration, and puts in issue the fact that the cause of action existed as the plaintiff has alleged, the plea is bad, because it does not confess the cause of action, and amounts to the general issue. 1 Chitty's Pl., 509.

But no direct and formal admission of the cause of action is required; it is enough that it is not denied; for, not being denied, it is in law admitted. Where the nature of the defence pleaded is not such as to require that the cause of action should be material in the plea, no mention of it is necessary; as where the defendant pleads in bar that the plaintiff is an alien enemy. 2 Chitty's Pl., 425.

The cause of action upon principle, and according to the precedents, is well enough confessed in these pleas. In this respect they appear to agree exactly with a form for a plea of discharge in bankruptcy given in 1 Saund. Pl. and Ev., 252.

It is suggested in argument that the the plea to the first and second counts is bad, because it shews that the decree in bank-

Morrison *v.* Woolson.

ruptcy undertook to discharge the defendant from his liabilities as partner without, at the same time, discharging him from his individual debts. If we were to understand the statement of the plea as descriptive of the certificate of discharge, so that it appeared on the face of the plea that the decree of discharge was limited to the debts which the defendant owed as partner, and left him liable in his individual capacity, this part of the case would present a question of some difficulty, which the court have not found themselves called upon to decide.

The ground of objection, as we understand it, is this: When a partner in trade petitioned as such for the benefit of the bankrupt act, if his petition was entertained, and he was declared a bankrupt, the act required that all the partners should also be declared bankrupts; that the property of the firm and of each partner would in such case be assigned and administered in bankruptcy; that, in short, the effect of the proceeding would be the same as if each partner had petitioned in his partnership and also in his individual capacity; that if any partner was entitled to be discharged from the debts of the firm, he would consequently and necessarily be also entitled to a discharge from his private liabilities; that his individual property, as well as the funds of the partnership, being assigned and administered in bankruptcy, the court could not decree him a discharge limited in effect to the partnership debts, as the discharge of them would necessarily involve his right to be discharged from the other.

It is to be observed that the law gave each partner the right to petition as such for the benefit of the act. There is nothing in the act which required him, in the same petition, to ask for a discharge from his individual debts. He could not be discharged upon his original petition for the benefit of the act, without a further application to the court. He was obliged to file, in a subsequent stage of the proceedings, a separate petition for that purpose. Could he not, in this petition for a discharge, follow the prayer of his original petition, and ask to be discharged from the debts of the firm, without at the same time praying for a discharge from his individual liabilities? Even if he were entitled under the law and the facts of his case to be discharged

from both classes of his debts, was he compelled to take a discharge from both classes, when he was willing and desirous to remain liable for one of them ?    We discover nothing in the terms of the act, and it would perhaps be difficult to find anything in general principles, which should prevent the petitioning bankrupt from waiving the whole or any part of the advantage given him by provisions of law introduced for his own benefit. Cases would be very likely to occur, where an honest and highminded man might find himself hopelessly involved in the liabilities of an extensive partnership, and feel compelled to claim the protection of our insolvent law against them, but would be willing and desirous to remain liable for his private debts.    Why should such a debtor be compelled to take more than he asked and more than he needed ?

Nor is it by any means clear that a partner might not be entitled to his discharge from one class of his debts and not upon the other class.

The creditors of the firm might assent to his discharge, and his private creditors might successfully resist; and *vice versa*.

He might have been guilty of a fraud against his individual creditors, which would not be available to the creditors of the firm.    For instance, suppose that in contemplation of bankruptcy, in concert with his partners and with the creditors of the firm, he had without consideration conveyed his private property to the firm, in order that the dividends to the creditors of the firm might be increased and the dividends to his own creditors diminished.    This would be a manifest fraud on his individual creditors, which would furnish them with ground to resist his application for a discharge from their claims.    But how could the creditors of the firm insist on a fraud, in which they had themselves concurred, and which was achieved for their benefit ?

Then again the other partner might die, pending the petition; and we do not see how a discharge could be decreed to the deceased partner; yet his death would not prevent the partnership funds from being administered in bankruptcy; at least, if his death occurred after an assignment.

We are not however called on to decide this point, because

Morrison v. Woolson.

we think the plea may well enough be understood as intending to state merely the effect of the decree on the cause of action, to which it is pleaded, and not as setting it out in full. Such statement of the legal effect of a decree or judgment is sufficient, and is now the most usual method of pleading. 2 Chitty on Pl., 354–5.

It is further urged that, supposing the decree to have been in terms a discharge from the defendant's partnership and individual debts, it is nevertheless void as to the liabilities of the firm, because the plea shews that there was no such decree of bankruptcy as warranted a discharge from the partnership debts.

The positions taken in this part of the argument, are as we understand them, substantially these. The defendant would not be discharged from the debts of the firm, except by proceedings under the fourth section of the bankrupt act. Proceedings under that section required that the assets of the firm and of each partner should be assigned and administered in bankruptcy. The assignment following the decree of bankruptcy, there could be no such assignment until each partner had been declared a bankrupt. This plea shews that the defendant was decreed a bankrupt and that Gardner, the other partner, was not. There could not therefore be any such administration and distribution of the partnership funds as the bankrupt act required, and consequently there could be no valid decree of discharge from the debts of the firm.

The argument of the plaintiffs' counsel, though admitted to be somewhat in conflict with the construction which courts in England have given to their bankrupt laws, is very forcible to shew that proceedings on the petition of a partner to be discharged from the debts of the firm, should have been such as he contends, requiring all the partners to be decreed bankrupts. But conceding the general position taken in this part of the argument, it by no means concludes the question raised on the plea.

It cannot, in the first place, be universally true, that all the individual members, who once constituted a firm, must be decreed bankrupts. As has been mentioned, no such decree could pass against a partner who had died. Yet it has not, and can-

not be successfully contended that a surviving partner, on a proper petition and on proper proceedings, could not have been discharged from the partnership debts. In this case the plaintiff declares against the defendant as surviving partner in the firm of Gardner & Woolson. It appears, therefore, upon the record, that when this suit was commenced, Gardner had died. Nothing in the case shews that he was living when the defendant was decreed a bankrupt, or when he filed his original petition; for all proceedings on Gardner's petition in Florida, so far as appears from the replications, had ceased before the defendant had taken any steps in this jurisdiction. This objection, which is urged to avoid the final decree of a court of competent jurisdiction, upon a proceeding which gave that court general jurisdiction of the cause, if it can be made at all, must be made with a certainty and distinctness at least equal to that which is required in a plea that is to take away jurisdiction, and abate a pending cause; and in such a plea the familiar rules of pleading would require an express averment that Gardner was living. If it were necessary to support the decree, this court would be bound, in absence of any allegation to the contrary, to intend, that Gardner, who is shewn to have been dead when his suit was commenced, had died when the defendant was decreed a bankrupt. The law gives jurisdiction to the district court, and that court must be presumed to have proceeded regularly according to the jurisdiction granted, at least until the contrary distinctly appears.

If, to authorize the decree of discharge, the law required that the defendant should be decreed a bankrupt as partner, there is nothing in the plea to negative that fact. The plea does not undertake to recite and set out the decree; it alleges that the defendant petitioned as partner; that such proceedings were had on his petition that he was declared a bankrupt; without express statement, it may well be intended that the decree followed the petition; that the court passed the decree that was asked for, and not a different decree, which would not sustain the subsequent proceedings; and if so, he would be declared a bankrupt as partner.

If the statement of the plea is to be taken as an averment that the defendant was decreed a bankrupt in his individual right and capacity, it does not negative the conclusion that he was also, by the same, or by a contemporaneous decree, declared a bankrupt as partner, and that Gardner was declared a bankrupt with him. The plea would then stand as if it had not mentioned, at all, the decree of bankruptcy. It was not necessary to state the immediate proceedings between the filing of the petition and the decree of discharge, nor does the plea undertake to set out and state them. The defendant pleads the decree with a *taliter processum est;* that is to say, he relies on the jurisdiction and course of the court, and not on a statement of the different steps in the cause, and his stating unnecessarily one thing does not rebut the legal presumption that every thing else was done which might be necessary to warrant the final decree pleaded.

There is a more general answer to this objection. Where a court has jurisdiction to render a judgment, or pass a decree, it is not necessary, in pleading the judgment or decree, to set out the successive steps, so that it may appear on the face of the record, that all the steps which were required to warrant the judgment or decree were regularly taken. It is enough to shew that the court had jurisdiction and rendered the judgment, or passed the decree. The reason why the intermediate steps need not be stated is because in another proceeding their regularity and sufficiency cannot be considered or questioned. It would be idle to state on the records matters which the court had no power to examine. It is a well settled principle that the judgment or decree of a domestic court, that had jurisdiction of the parties and of the cause, cannot be revised in another cause and another tribunal. And this is a rule of general application not conferred on jurisdictions which proceed according to the course of the common law. *Baxter* v. *Ins. Co.*, 6 Mass., 277; *S. C.*, 7 Mass., 275; *Geyer* v. *Aguilar*, 7 Tenn. Rep., 681; *Service* v. *Heermance*, 1 Johns., 91; *Ladbroke* v. *James*, Willes, 201; 1 Greenl. Ev., § 525; Story on Equity Pl., §§ 782, 790 and 791; 2 Burn's Ecc. Law, 50.

Morrison *v.* Woolson.

On the contrary, where the law provides that certain acts and things done before a court or magistrate, shall have a certain effect, as for instance to discharge a debtor from arrest, but does not entrust the court or magistrate with jurisdiction to pass a final decree upon the validity of the proceedings, there the party who relies in pleading, on such act and proceedings, must set them all out, and shew that every thing was regularly done according to the law, which prescribes the course to be taken. Thus, in an action under our statute on a poor debtor's bond, if the defendant plead the debtor's discharge upon taking the oath prescribed by law, it is not enough to allege that the debtor applied to the magistrate, and was admitted to take the oath; because the magistrates have no jurisdiction to pass a final decree, establishing the validity of the discharge, though their certificate may be received as evidence of the facts certified. The oath, which they admit the poor debtor to take, is no more than the last of several successive steps, which are necessary to constitute his discharge. *Kay* v. *Palmer*, 5 N. H. Rep., 43; *Banks* v. *Johnson*, 12 N. H. Rep., 445.

But in New-York the court to which the insolvent debtor made his application, had jurisdiction to pass a decree for his discharge, and according to the principle above stated, it has been held in that State, that in pleading an insolvent's discharge, it was sufficient to state facts which shewed that the court had jurisdiction, and plead the decree without setting out the intermediate proceedings. *Service* v. *Heermance*, 1 Johns. Rep., 91.

By the English bankrupt act, where a defendant had obtained a certificate before the suit against him was brought, he was allowed to plead his bankruptcy generally, concluding to the country, and to give in evidence the special matter, which entitled him to his discharge; and on trial he was bound to prove all the proceedings required by the statutes, the certificate being made *prima facie*, but not conclusive evidence. Where he obtained his certificate after the suit was commenced, the provision, which permitted him to plead generally, did not apply; and in that case, he was obliged to set out all the steps that warranted his discharge. The certificate of the chancellor was not in the na-

ture of a decree or judgment on the validity and sufficiency of those proceedings. It did not constitute his discharge and could not be pleaded as such. 2 Chitty's Pl., 426, 427 ; 1 Cook's Bankrupt Laws, 82, 502, 526 ; 3 Wentworth's Pleadings, 188 ; *Miles* v. *Williams*, 1 P. Wms., 258, 259 ; *S. C.*, 10 Mod., 160, 247.

But by the late bankrupt act of the United States, the district court was empowered to allow and decree to the bankrupt, who had complied with the law, a discharge from his debts, and give him a certificate thereof, and it was provided that such discharge and certificate, when duly granted, should in all courts of justice, be deemed a full and complete discharge of all debts, contracts, and other engagements, which were provable under the act, and should be and might be pleaded as a full and complete bar to all suits brought in any court of judicature whatever ; and that the same should be conclusive evidence, of itself, in favor of such bankrupt, unless the same should be impeached for some fraud or artful concealment by him, of his property or rights of property, contrary to the provisions of the act, on reasonable notice specifying in writing such fraud or concealment. Section 4. The district court was thus entrusted with jurisdiction to pass the decree for the bankrupts' discharge. That was the tribunal appointed by the act to decide and adjudge on the question of his right to the certificate. All persons interested, were made parties, on notice prescribed by the law, to the proceedings in that court, and might there resist the debtor's application for his discharge. The decree of that court was expressly declared by the statute to be a final discharge. That decree, and not the proceedings on the petition, was to be pleaded in bar of the bankrupt's debts, and the certificate was made conclusive evidence, not only of the fact that the decree was passed, but also of the validity and legal effect of the decree, unless impeached for a cause named in the act, and on notice in writing. The decree cannot be thus impeached in demurrer to the plea. That must be done on notice in writing, which in our practice is given by a replication specifying the frauds and concealments on which the plaintiff relies to avoid the otherwise conclusive effect of the decree.

It was the decree which constituted the discharge, and was to be pleaded as such. If the defendant should plead and prove all the matters and things, that under the act would be necessary to entitle him to his discharge, it would be no defence, because the law entrusted to the district court the jurisdiction, to decide and conclude that question. And this jurisdiction, when it once attaches, must be held to extend not only to the general merits of the bankrupt's case, but to the sufficiency and regularity of the proceedings; otherwise the certificate could not be, in the language of the act, conclusive evidence of the bankrupt's discharge. If the decree could be impeached, because before another tribunal and in another cause, the intermediate proceedings between the petition and the final decree did not appear to be, in all respects, such as that other tribunal might be inclined to consider as sufficient, it would be in direct contradiction to the express words of the act, which declares that the decree shall not be impeached, except for fraud or concealment specified in writing.

It has accordingly been held in this State that a defendant, in pleading his bankruptcy, is not required to state the different steps necessary under the act to his discharge; he is only required to shew by his plea that the district court had jurisdiction and decreed his discharge. And the same rule appears to have been followed in other jurisdictions. *McNulty* v. *France*, 1 Sandf. Sup. Ct. Rep., 128; *Buckman* v. *Cowell*, 1 Comstock, 505; *Dresser* v. *Brooks*, 3 Barb. Sup. Ct. Rep., 429; *Rowan* v. *Holcomb*, 16 Ohio Rep., 468.

In this case, the plea to the first and second counts alleges that the defendant resided in this State and made his petition, verified by his oath, to the district court of this district for the benefit of the act, as partner. This is enough to shew that the court had jurisdiction. It then alleges that such proceedings were had on the petition that the defendant was declared a bankrupt, and it was decreed by that court, that the defendant be fully discharged from all his debts owing by him as partner in that firm, when he presented his petition. This shews that the court took and entertained jurisdiction of his petition as partner, and proceeded

upon it to decree his discharge from his partnership debts.    The plea does not undertake to set out the intermediate proceedings, but relies on a *taliter processum est*, and in this respect differs from *Tracy* v. *Dakin*, cited for the plaintiff, from 7 Johns. Rep., 75.    The district court adjudged upon the sufficiency of those proceedings, and had jurisdiction to conclude the question, and the decree of discharge cannot be held void in this court because the plea states an interlocutory order, and does not state it to have been such as we might think the regular and proper course of proceedings would have required.

The pleas therefore must be held sufficient, and this brings us to the questions which arise on the replications.

The ground taken in support of the replications, we understand to be this.    When a partner petitioned as a member of his firm, for the benefit of the bankrupt act, his petition brought into bankruptcy the firm, and the property of the firm, and also, all the individual partners, with the individual property of each. When Gardner petitioned in Florida, as partner, the jurisdiction of the territorial court there attached on the firm and both the partners; and thus excluded the jurisdiction of the district court in this State.    Therefore the proceedings in this district were *coram non judice* and the decree of discharge pleaded by the defendant void.

The defendant resided here, and applied to the district court in this State.    By the bankrupt act that court had general jurisdiction of his petition.    The court in Florida had, as the plaintiff maintains, concurrent jurisdiction, and he relies on the matter replied, not to arrest or defeat the proceedings in this State, by plea or exception to the cause while it was pending, but to shew, in another cause and another court, after that cause had proceeded without objection to a final determination, that the decree of the court was absolutely void for want of jurisdiction.

Even if the general ground here taken by the plaintiff were conceded to him, his replications must still be held insufficient; because they do not shew, that at the time when the defendant's petition was filed, there was any petition of Gardner pending in Florida, or that there had been any decree on Gardner's petition, either awarding or denying a discharge to the defendant.

The petition of Gardner, as stated in the replications, was filed April 15, 1842, and such proceedings were had upon it, that on the fourteenth of May, 1842, *Gardner* was decreed a bankrupt, and Kelley appointed his assignee. No further or later account is given of the proceedings on that petition. There is no statement of any decree withholding, or granting a discharge, nor any allegation that the petition was pending after May 14, 1842. The defendant's petition was filed in this district Dec. 21, 1842, more than seven months after the last step taken in the other petition, and without any decree passed on the question of the defendant's discharge. The mere fact that a petition had once been presented in Florida, though it had been abated by death, abandoned by the petitioner, or dismissed for irregularity or any other cause, could not prevent the defendant from applying here under the act, after the prior petition had been wholly disposed of.

The replications are liable to objection on another special ground. They allege that *Gardner* was, on his petition, declared a bankrupt, and Kelley appointed *his* assignee. This shews that the court in Florida, entertained jurisdiction of the petition, so far as related to Gardner in his individual capacity, by decreeing *him* to be a bankrupt and appointing an assignee of *his* estate ; but it does not shew that the court there took any jurisdiction of Woolson or of the firm. They may have declined, jurisdiction, so far as regarded the partnership, on various grounds ; because the petition itself was not sufficient for that purpose, not being accompanied with the requisite schedules of the assets and debts of the firm ; or because the fact of the partnership did not appear, or Gardner may have voluntarily abandoned that part of the prayer of his petition. In this respect the replications differ essentially from the pleas, which shew that the court in this district did take jurisdiction of the defendant's petition to be discharged from the partnership debts, and decreed him such a discharge accordingly.

But there is another and broader view of the questions arising on these replications, which we have thought it expedient to consider, lest if we decided the case wholly on these objections

to the peculiar allegations of the replications, we might be supposed to acquiesce in the general position taken by the plaintiff.

If the court in Florida and the court here, had, as the plaintiff argues, general concurrent jurisdiction, and the court in Florida had proceeded on the prior petition of Gardner, to pass a decree giving or refusing a discharge to this defendant, from his partnership or his individual liabilities, we have found nothing in the provisions of the bankrupt act, and are not acquainted with any general principles of law on which we can hold the decree of the district court in this State, to be void.

The act in terms makes the decree of the court in this district final and conclusive. No exception is expressed, and there is no provision from which an exception can be fairly implied. Suppose the fact to have been that the court in Florida decreed a discharge to the defendant. The decree here, on the plaintiff's argument, would be wholly void. Yet if the replications had fully and truly stated all the proceedings in the other jurisdiction, it would have appeared on the face of the replications themselves, that the plaintiff had no cause of action; and this may be the reason why the pleader who drew the replications, thought it expedient to stop short with an interlocutory order, instead of proceeding to state how the petition of Gardner was finally disposed of.

If the decree, on the contrary, refused a discharge to the defendant, it would not be a ground to hold a different and conflicting decree void, which was made by a court having jurisdiction of the subject matter and of the person of the petitioner. It is material to bear in mind that the question is not whether the district court here, if the objection had been made in that court by proper plea or exception, while the defendant's petition was pending, ought to have dismissed or arrested the proceedings. If on any such collision between the two jurisdictions, as the plaintiff's argument suggests, the assignee under the prior petition, or Gardner, or a creditor, or any other interested party had appeared in the district court, and objected that a prior petition was pending, which involved the same matters, or that a final decree had been already passed on a prior petition, a very dif

ferent question would have been presented for the determination of the district court from that which is raised here on this demurrer. The plaintiff in this case must maintain, that if the district court in this State, having a clear general jurisdiction over the cause and the party, and authority to make a decree, declared by the act in the strongest terms to be final and conclusive, proceeded on the defendant's petition to make the decree, that decree is to be held wholly void, when set up in another cause, on account of a prior proceeding on the same subject matter in another court of concurrent jurisdiction, though no objection was made to the proceeding in this district, by any of the parties interested.

We have seen no authority which gives any countenance to such a doctrine. But the authorities, which establish a contrary principle, are numerous and quite conclusive. The judgment in a former suit may be set up as matter of defence to an action. So the pendency of a former suit, in a domestic court of concurrent jurisdiction, may be pleaded in abatement. If two common informers bring separate suits for the same penalty, the first action may be pleaded in abatement of the second. But in all these cases, if the second action proceeds to judgment, that judgment is binding, and cannot be questioned collaterally in another proceeding. A judgment cannot be avoided by pleading a prior judgment of another court of concurrent jurisdiction. The books, so far as our knowledge extends, furnish no precedent of any such plea. *Fowler* v. *Hart*, 11 Johns. Rep., 111; *Dexter* v. *Hazen*, 10 Johns. Rep., 246; 2 Chitty's Pl., 490.

And this rule, which requires a former judgment or decree, to be objected to the second suit by plea, or other exception, is not confined to proceedings at law. Story on Equity Pl., §§ 735, 736.

There is nothing in the nature of a decree for the discharge of a bankrupt under the late act, to withdraw the case from the operation of this general principle. The creditors were required to have notice of the petition and had power to come in and object in every stage of the proceedings. If the creditor can shew that the decree of discharge was dishonestly obtained by

fraud and concealment of his debtor's property, he may in that way under the act avoid the decree. Otherwise the act, not unreasonably, provides that the decree shall be final and conclusive.

· The proceedings, so far as they relate to the bankrupt's estate, are *in rem*, providing for the assignment and sale of his property, and the distribution of the proceeds among his creditors. Decrees and sentences of this nature are held on general principles to be conclusive against all the world. 1 Greenl. Ev., § 525.

But if the decree of discharge is void, because the court had no jurisdiction of the petition, all the orders and decrees depending on the petition, must be equally void for the same cause, including all assignments and sales of the property and all distribution of the funds; and all persons, who have acted in the premises, under the orders and decrees of the court, as the officers and agents of the law, must be held answerable, as wrong doers. These consequences necessarily follow from a total defect of jurisdiction, such as will make the decree of discharge void on the ground assumed in the replications. We should be slow to admit a doctrine, which leads to such results.

There is nothing in the bankrupt act, which makes this decree of discharge void for the cause alleged in the replication. On the contrary, the act, in express terms, declares the decree to be binding and conclusive, and makes no exception of this case. On general principles, the decree being made by a domestic tribunal, which had jurisdiction over the cause and the party, its effect cannot be questioned in this cause and in this court, on the ground that a fact existed, which, if it had been shewn in due time and by proper exception, to the court where the petition was pending, ought to have arrested the proceedings and prevented the decree.

The conclusion is that there must be

> *Judgment, on the demurrer, for the defendant.*